**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 7, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JASON EDGAR KORT,

    Defendant-Appellant.

No. 10-5104
(D.Ct. No. 4:10-CR-00030-GKF-2)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

---

[*]  This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Appellant Jason Edgar Kort pled guilty to conspiracy to possess and distribute more than 500 grams of methamphetamine. He now appeals his 135-month sentence on grounds the district court erred in denying both his request for an additional two-level downward departure based on his substantial assistance to the government and his motion for a variance based on the same assistance to the government and an alleged sentencing disparity. We exercise jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm.

## I. Factual and Procedural Background

From December 2009 to February 27, 2010, Mr. Kort attempted to expand his Oklahoma methamphetamine distribution activities and increase his profits by finding and utilizing a new out-of-state methamphetamine source. In so doing, he conspired with and directed the activities of several others concerning the purchase of methamphetamine on four different occasions, including: (1) 226.8 grams of a mixture or substance containing methamphetamine between February 1 and February 12, 2010; (2) 226.8 grams of a mixture or substance containing methamphetamine on February 17, 2010; (3) 81.4 grams of methamphetamine with a purity level of 81.7%, or 66.5 grams of 'Ice," and 110.3 grams of methamphetamine with a purity level of 80.9%, or 89.2 grams of "Ice," on February 23, 2010; and (4) 324.4 grams of methamphetamine with a purity level

of 83.3%, or 270.2 grams of "Ice," and 129.2 grams of a mixture or substance containing methamphetamine on February 25, 2010.

On February 27, 2010, authorities arrested Mr. Kort, and thereafter, a grand jury indicted Mr. Kort and his co-conspirators, charging them with conspiring to possess and distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii). After Mr. Kort pled guilty and the district court accepted his plea, a probation officer prepared a presentence report calculating his sentence under the applicable 2009 United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). The probation officer set Mr. Kort's base offense level at 34 pursuant to the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(3). The probation officer arrived at the offense level of 34 by converting the quantity of "Ice" and other methamphetamine substance for which Mr. Kort was responsible into its marijuana equivalent. One gram of "Ice" equals twenty kilograms of marijuana, while one gram of a mixture or substance containing methamphetamine equals only two kilograms of marijuana. *See* U.S.S.G. § 2D1.1, cmt. n.10(E) (Drug Equivalency Table). In this case, the 425.9 grams of "Ice" for which Mr. Kort was responsible equated to 8,518 kilograms of marijuana, and the 582.8 grams of a mixture or substance containing a detectable amount of methamphetamine

equated to 1,165.6 kilograms of marijuana.  These amounts resulted in a total of 9,683.6 kilograms of marijuana for a base offense level of 34.

The probation officer also increased by four levels Mr. Kort's offense level under U.S.S.G. § 3B1.1(a) for being an organizer or leader of a conspiracy involving five or more participants but recommended a three-level offense reduction under U.S.S.G. § 3E1.1(a) and (b) for his acceptance of responsibility, for a total offense level of 35.  A total offense level of 35, together with Mr. Kort's criminal history category of III, resulted in a recommended advisory Guidelines range of 210 to 262 months imprisonment.  The probation officer also found no factors warranting a departure from the Guidelines calculations or a variance under the sentencing factors in 18 U.S.C. § 3553(a).

Mr. Kort moved for a variance under 18 U.S.C. § 3553(a)(6), claiming a disparity existed between his sentence and those convicted for similar quantities which did not reach the 80% purity threshold for "Ice."  Mr. Kort reasoned he should not be held more culpable simply because the methamphetamine for which he was responsible had purity levels of 81.7%, 80.9%, and 83.3%, which barely exceeded the 80% purity threshold.  He also moved for a variance under § 3553(a)(2) based on his substantial assistance to the government in providing information concerning others involved in drug trafficking activities.

In response, the government filed a sealed motion objecting to Mr. Kort's motion for a variance but moving for a four-level downward departure in his offense level under U.S.S.G. § 5K1.1 for his substantial assistance, which would result in a Guidelines range of 135 to 168 months imprisonment. In requesting the downward departure, the government described the type of information and assistance Mr. Kort provided. Mr. Kort replied to the government's motion, stating the government accurately outlined his assistance. However, he claimed an additional two-level downward departure was warranted pursuant to: (1) the guilty plea of another after he agreed to testify against him; and (2) U.S.S.G. § 5K1.1(a)(4), because of the potential danger or risk of injury to himself and his family resulting from his assistance to the government.

At sentencing, Mr. Kort, through counsel, made no objections to the findings of fact used in the calculation of his sentence or the calculation of the Guidelines range. However, Mr. Kort continued to seek a variance, and both parties provided argument on the downward departure issue previously raised, including the type of assistance Mr. Kort provided to the government, the degree of departure warranted, and the steps taken to ensure Mr. Kort's safety during his incarceration, especially in light of a threatening note he received. While Mr. Kort's counsel continued to argue for an additional two-level departure and a 120-month sentence, government counsel argued Mr. Kort's assistance to date only

justified the four-level downward departure requested but stated the government could foreseeably file a Rule 35(b) motion for a reduction of sentence if Mr. Kort became a witness in the prosecution of others. It also explained it had contacted the Bureau of Prisons, advising it of safety and separation concerns regarding Mr. Kort and confirmed it would also set out in writing and provide to the Bureau of Prisons information on such safety and separation concerns.

After hearing and considering the parties' arguments, the district court granted the government's motion for a four-level downward departure under § 5K1.1, stating it concurred with the government that Mr. Kort's substantial assistance warranted a four-level reduction and explaining the government was in the best position to judge such assistance and the level of reduction warranted. In denying Mr. Kort's request for an additional two-level departure, it pointed out the government had indicated a Rule 35(b) motion for a reduction in sentence may be warranted in the future and confirmed the government would notify the Bureau of Prisons regarding the safety and separation concerns related to Mr. Kort's assistance to the government.

The district court also considered and denied Mr. Kort's request for a downward variance based on both his substantial assistance to the government and the perceived sentencing disparity between him and other similarly-situated

defendants who possessed similar quantities of methamphetamine which did not reach the 80% purity level. The district court explained it had found no reason "to impose a sentence below the departure guideline range" after approving the significant four-level downward departure and also found "no sentencing disparities" in Mr. Kort's case. In finding no sentencing disparities, it noted it had considered the purity of the methamphetamine for which Mr. Kort was responsible and, relying on the Sentencing Commission's application note 9 to § 2D1.1 on departures, explained possession of unusually pure narcotics indicated a prominent role in the criminal enterprise and proximity to the source of the drugs. *See* U.S.S.G. § 2D1.1, cmt. n.9.

In imposing Mr. Kort's sentence, the district court recognized the advisory nature of the Guidelines and explained it had considered those Guidelines, together with the sentencing factors in 18 U.S.C. § 3553(a), including the nature of the offense; Mr. Kort's criminal history and characteristics, including his substantial assistance to law enforcement; and the need for the sentence to avoid unwarranted disparities among defendants, reflect the seriousness of the offense, promote respect for the law, provide just punishment, and protect the public from further crimes. Based on these factors, it determined a sentence of 135 months – at the low end of the revised Guidelines range – was an appropriate and reasonable sentence.

## II. Discussion

## A. Disparity of Sentence

On appeal, Mr. Kort contends the district court erred in denying his request for a variance based on a sentencing disparity between himself and similarly-situated defendants. In support, he continues to claim his sentence is disproportionate to others because he received an enhancement under U.S.S.G. § 2D1.1 for 80% pure methamphetamine, or "Ice," even though one-half of the methamphetamine for which he was responsible was barely over the 80% purity range at 81.7%, 80.9%, and 83.3%. He contends the 80% threshold imposed on him is "arbitrary" because it makes him more culpable than someone who possessed 79.9% pure methamphetamine. He also suggests the district court impermissibly relied on application note 9 to § 2D1.1 to conclude the methamphetamine in his case was "unusually pure" and he had a higher role in the criminal enterprise, when he already received an adjustment for his role as an organizer or leader. He argues his purchase of 80% pure methamphetamine did not make the transactions he participated in "more dangerous" and that he only bought the type of methamphetamine available to him, thereby intimating he did not intend to purchase "Ice" purity levels of methamphetamine. In making these contentions, Mr. Kort acknowledges the district court properly calculated the advisory Guidelines.

We begin by addressing our standard of review and the principles applicable to the issues raised. We review a sentence for reasonableness, using a deferential abuse of discretion standard. *See United States v. Smart*, 518 F.3d 800, 803, 806 (10th Cir. 2008). Our reasonableness review "includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *Id.* at 803. A challenge to the procedural reasonableness of a sentence includes not only whether the district court properly calculated the sentence under the Guidelines but whether it failed to consider the § 3553(a) factors or to adequately explain the chosen sentence. *See United States v. Sayad,* 589 F.3d 1110, 1116 (10th Cir. 2009). In considering the district court's application of the Guidelines, we review factual findings for clear error and legal determinations de novo. *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006).

In turn, substantive review involves "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in § 3553(a)." *Sayad*, 589 F.3d at 1116 (quotation marks and citation omitted). In reviewing a sentence for substantive reasonableness under the § 3553(a) factors, we give substantial deference to the district court. *See id.* As a result, a sentence is substantively unreasonable only if it is arbitrary, capricious,

-9-

whimsical, or manifestly unreasonable. *Id.* Moreover, if the sentence is within the correctly-calculated Guidelines range, we may apply a presumption of reasonableness to the sentence. *See Kristl*, 437 F.3d at 1054. A defendant may rebut this presumption by demonstrating the sentence is unreasonable when viewed under the § 3553(a) factors. *See id.* at 1054-55.

While Mr. Kort states he is not challenging the calculation of his sentence, he nevertheless challenges the application of the base offense level of 34 in calculating his sentence and the district court's reliance on other provisions of the Guidelines for the purpose of calculating or explaining his sentence. As a result, we consider both the procedural and substantive reasonableness of his sentence.

We begin by pointing out "Ice" is "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity" and reiterating that one gram of "Ice" equals twenty kilograms of marijuana, while one gram of a mixture or substance containing methamphetamine only equals two kilograms of marijuana. *See* U.S.S.G. § 2D1.1, n.(C) (Drug Quantity Table) and cmt. n.10(E) (Drug Equivalency Table). These provisions are used to determine a base offense level for "Ice" and other methamphetamine, which in this case was 34. While these provisions are merely advisory, the district court did not abuse its discretion

in using them to calculate the quantity and quality of Mr. Kort's

methamphetamine, and, as Mr. Kort admits, those calculations are accurate.


Nevertheless, Mr. Kort contends the Sentencing Commission's

recommended 80% threshold for "Ice" is an arbitrary benchmark.  The Sentencing

Commission provides a background note to § 2D1.1 which explains:

> The base offense levels in § 2D1.1 are either provided directly by the
> Anti-Drug Abuse Act of 1986 or are proportional to the levels
> established by statute, and apply to all unlawful trafficking.  Levels
> 32 and 26 in the Drug Quantity Table are the distinctions provided by
> the Anti-Drug Abuse Act; however, further refinement of drug
> amounts is essential to provide a logical sentencing structure for drug
> offenses.  To determine these finer distinctions, the Commission
> consulted numerous experts and practitioners, including authorities at
> the Drug Enforcement Administration, chemists, attorneys, probation
> officers, and members of the Organized Crime Drug Enforcement
> Task Forces, who also advocate the necessity of these distinctions.
> Where necessary, this scheme has been modified in response to
> specific congressional directives to the Commission.

U.S.S.G. § 2D1.1(c), cmt. background.  Given the Sentencing Commission based

the drug quantities and conversion rates provided in § 2D1.1 on Congressional

directives and appropriate reliance on experts and practitioners in the field, Mr.

Kort has not shown they are arbitrary or that the district court erred or otherwise

abused its discretion in utilizing them, including using the 80% threshold and

calculations for "Ice" methamphetamine.

In addition, the Guidelines contemplate both an increased base offense level for methamphetamine with a purity level over 80% under U.S.S.G. § 2D1.1 and an upward enhancement for one's role as an organizer or leader under U.S.S.G. § 3B1.1(a). Contrary to Mr. Kort's contentions, these provisions do not appear to be mutually exclusive sentencing considerations. Moreover, in this case, Mr. Kort's four-level leadership role enhancement was not based on the purity level of the methamphetamine but on his directing the activities of those purchasing "Ice" and other methamphetamine on his behalf. Thus, the criteria for his leadership enhancement was based on different criteria than his base offense level, causing no impermissible overlap or double counting.

As to the district court's reliance on application note 9 to § 2D1.1, it is clear it referred to the application note only for the purpose of explaining why the Sentencing Commission would recommend a lengthier sentence for trafficking drugs with higher purity thresholds. Application note 9, which does not deal with methamphetamine or base offense levels but with other types of drugs and upward departures for their unusually high purity, states:

> The purity of the controlled substance ... may be relevant in the sentencing process because it is probative of the defendant's role or position in the chain of distribution. Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs.

U.S.S.G. § 2D1.1, cmt. n.9.  While application note 9 does not apply to methamphetamine, it is evident the Sentencing Commission recommends a higher offense level for "Ice" methamphetamine, in part, because a drug of such high purity can be "cut" with other substances for distribution in larger quantities. Thus, the district court did not abuse its discretion in referring to this application note to explain the Sentencing Commission's reason for imposing lengthier sentences for drugs of higher purity.

It is also apparent the district court considered all of Mr. Kort's arguments concerning his perceived sentencing disparity and nevertheless rejected those arguments.  It also considered the § 3553(a) factors, including the need to avoid disparity in sentencing, and provided the requisite general statement of the reasons for its imposition of his sentence, including the fact that it found no sentencing disparity existed and that a sentence at the low end of the Guidelines range would provide a sufficient, but not greater than necessary, sentence for the purpose of punishing him for his crime.  Because the district court properly calculated the sentence under the Guidelines, considered Mr. Kort's arguments and the § 3553(a) factors, and adequately explained the chosen sentence, Mr. Kort's sentence is procedurally reasonable.  *See Sayad,* 589 F.3d at 1116.

Having determined Mr. Kort's sentence is procedurally reasonable, it is entitled to a presumption of substantive reasonableness which he may rebut by demonstrating the sentence is unreasonable when viewed under the § 3553(a) factors. *Kristl*, 437 F.3d at 1054-55. His only attempt to do so is to argue the 80% threshold for "Ice" is arbitrary when considered with similarly-situated defendants attributed with methamphetamine of a lesser purity, including those hypothetical defendants with similar quantities of methamphetamine reaching only a 79.9% threshold. While one of the sentencing factors to be considered under § 3553(a) is the need for the sentence to avoid unwarranted disparities among defendants, the Guidelines recommend a higher offense level for Mr. Kort's methamphetamine, which had a purity level over 80%. In turn, defendants trafficking methamphetamine with lower purity levels are simply not similarly-situated for the purpose of claiming an impermissible sentencing disparity.

In addition, nothing in the record suggests Mr. Kort previously argued his purchase of 80% pure methamphetamine did not make the transactions he participated in "more dangerous" or that he only bought the type of methamphetamine available to him. However, even if we credited and considered these arguments, they are clearly insufficient, when weighed with the § 3553(a) sentencing factors articulated by the district court, to tip the balance in Mr. Kort's favor for the purpose of finding his sentence substantively unreasonable.

-14-

## B. Substantial Assistance

In addition to sentencing disparity, Mr. Kort contends the district court erred in denying his request for an additional two-level downward departure under U.S.S.G. § 5K1.1. In support, he renews his contention his assistance to the government resulted in the guilty plea of another and placed himself and his family in potential danger or risk of injury, as demonstrated by the threatening note he received while at the local jail. He also claims the district court impermissibly gave full weight to the government's opinion on whether a further degree of departure was warranted, thereby delegating away its Article III powers. He also contends it failed to consider his request under § 5K1.1(a)(4) concerning the risk or danger posed to himself or his family. Even if another two-level downward departure was not warranted for such assistance, Mr. Kort requests a remand to the district court to consider his motion for a variance on the same grounds.

We begin with Mr. Kort's request for an additional downward departure. "[W]e lack jurisdiction ... to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not warrant the departure." *United States v. Bergman*, 599 F.3d 1142, 1150 (10th Cir.) (quotation marks and citation omitted), *cert. denied*, 131 S. Ct. 219 (2010). "We may review a denial of a downward departure only if the

denial is based on the sentencing court's interpretation of the Guidelines as depriving it of the legal authority to grant the departure." *Id.* (quotation marks and citation omitted). Here, the district court granted a four-level downward departure, indicating it recognized its authority to make such departures. As a result, we lack jurisdiction to consider Mr. Kort's request for an additional two-level departure.

As to whether Mr. Kort's government assistance warranted a downward variance, we note the district court considered Mr. Kort's argument and rejected it. In so doing, it considered the government's arguments on the degree of departure warranted and concurred with the government that Mr. Kort's substantial assistance warranted a four-level reduction. Despite Mr. Kort's contentions, it was not an abuse of discretion to rely on the government's recommendation or state the government was in the best position to judge such assistance and the level of reduction warranted. Indeed, reliance on the government's recommendation is contemplated by the Guidelines, as indicated by an application note to § 5K1.1, which explicitly states: "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." U.S.S.G. § 5K1.1, cmt. n.3. The district court also reasonably pointed out the government had indicated a Rule 35(b) motion for a reduction in

sentence may be warranted in the future for any continuing assistance to the government and confirmed the government would notify the Bureau of Prisons regarding the safety and separation concerns related to Mr. Kort's assistance to the government. For the purposes of procedural reasonableness, it is clear the district court considered all of Mr. Kort's contentions concerning his government assistance and sufficiently explained Mr. Kort's sentence, including why it declined to provide a variance for such assistance. Mr. Kort has not provided persuasive argument for the purpose of rebutting the substantive reasonableness of his sentence on government assistance grounds nor otherwise shown his 135-month sentence, which is at the low end of the Guidelines range, is arbitrary, capricious, whimsical, or manifestly unreasonable.

## III. Conclusion

For these reasons, we **AFFIRM** Mr. Kort's sentence. In addition, we **GRANT** the parties' motions to file the briefs in this matter under seal. Therefore, all briefs in this matter shall remain under seal.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge