**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 22, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

v.

CHICO DAVIS,

       Defendant – Appellant.

No. 12-3264
(D.C. No. 6:11-CR-10194-MLB-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH, HOLLOWAY,** and **HOLMES,** Circuit Judges.

Chico Davis appeals his sentence of 308 months' imprisonment after pleading

guilty to several drug and firearms violations, including one count of distributing more

than 50 grams of methamphetamine, a violation of 21 U.S.C. § 841(a)(1). He argues the

district court erred when it sentenced him to a term of confinement above the range

recommended by the United States Sentencing Guidelines ("U.S.S.G" or the

"Guidelines"). More particularly, he contends the district court committed procedural

error by disregarding his argument that the length of his recommended sentence under the

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Guidelines was already inflated because of the disparity between sentences for actual (that is to say, pure) methamphetamine versus methamphetamine mixture. He asserted to the district court that this built-in disparity obviated any need for an upward variance from his recommended Guidelines sentence. He believes the district court ignored this argument.

We conclude the district court did not err in imposing a sentence that exceeded the advisory Guidelines range. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court's judgment.

## I. BACKGROUND

In the spring of 2011, the storefront of Bandit Trading in Wichita, Kansas was a hotbed of illegal activity. Every few days or so, Mr. Davis would arrive there with illicit merchandise—sometimes guns, sometimes drugs. He would sell the guns and drugs to a man he believed to be the store's proprietor, but who was in fact an undercover federal agent. This went on for a couple of months. Eventually, the game was up: Mr. Davis was arrested on multiple felony charges. All told, Mr. Davis ended up pleading guilty to eight counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); one count of distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1); and one count of distributing more than 50 grams of methamphetamine, also in violation of 21 U.S.C. § 841(a)(1).

To assist the district court in deciding Mr. Davis's sentence, the United States Probation Office compiled a pre-sentence report ("PSR"). In calculating his Guidelines sentence, the PSR determined that Mr. Davis's eight felon-in-possession-of-firearms

counts yielded an adjusted offense level of 29, and his two drug counts added up to an adjusted offense level of 32. The calculation of the offense level on the drug counts is of particular importance to this case.

Section 2D1.1 of the Guidelines provides the rubric for calculating offense levels relating to violations of 21 U.S.C. § 841(a)(1).[1] Mr. Davis's PSR took into account both his charged offenses and any conduct relevant to the offenses. Here, Mr. Davis's relevant conduct extended beyond trafficking in crack cocaine and methamphetamine alone. He had sold other drugs at Bandit Trading, as well: powder cocaine, ecstasy, and marijuana. And even though the government had dismissed those charges in exchange for his guilty plea, Mr. Davis's involvement with their sale remained relevant to the calculation of his offense level for sentencing purposes.

Where multiple types of drugs are involved, the Guidelines "provide a means for combining differing controlled substances to obtain a single offense level" by way of the "Drug Equivalency Tables." U.S.S.G. § 2D1.1 cmt. 10(B). The Drug Equivalency Tables accomplish this aim by setting out formulae for converting disparate drug quantities into their equivalent weights in marijuana. Mr. Davis pleaded guilty to distributing 57.41 grams of methamphetamine mixture of 93% purity. At that level of purity, 57.41 grams of methamphetamine mixture contains 53.3913 grams of actual

---

[1] Mr. Davis's advisory Guidelines sentence was calculated using the 2011 edition of the United States Sentencing Commission Guidelines Manual. All references to the Guidelines in this order and judgment are to the 2011 edition.

methamphetamine.[2] The Drug Equivalency Tables treat actual methamphetamine and methamphetamine mixture differently. *See* U.S.S.G. § 2D1.1 cmt. 10(D). Under the Tables, one gram of actual methamphetamine is equivalent to twenty kilograms of marijuana, and one gram of methamphetamine mixture is equivalent to two kilograms of marijuana. *See id.* In other words, a ten-to-one ratio is employed in calculating sentences for actual methamphetamine versus methamphetamine mixture in the Guidelines.

The Guidelines dictate that a defendant's advisory sentencing range for methamphetamine distribution is to be calculated using whichever drug weight—actual or mixed—would produce the greater offense level. *See* U.S.S.G. § 2D1.1(c)(B) ("In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater."). In Mr. Davis's case, the "actual methamphetamine" amount of 53.3913 grams produced the greater offense level.

Mr. Davis's PSR thus multiplied the 53.3913 grams of actual methamphetamine by 20 kilograms to obtain a total of 1067.826 kilograms of marijuana for purposes of calculating his combined offense level. Once the equivalent amounts of the other drugs that Mr. Davis had sold were added together in similar fashion, the PSR held Mr. Davis accountable for a total of 1220.6133 kilograms of marijuana. This corresponded to a base offense level of 32. After other relevant adjustments were made, the PSR presented to

---

[2] In the Guidelines, "'Methamphetamine (actual)' refer[s] to the weight of the controlled substance, itself, contained in the mixture or substance." U.S.S.G. § 2D1.1(c)(B).

the district court ultimately recommended a total offense level of 31.[3] An offense level of 31, coupled with Mr. Davis's criminal-history category of IV, resulted in a recommended sentence of 151 to 188 months under the Guidelines.

After reviewing the PSR, the district court gave notice that it was considering an upward variance from the recommended sentence's high end of 188 months. The court did not believe the advisory sentencing range adequately took into account the seriousness of Mr. Davis's offenses or his lengthy criminal record, stating that Mr. Davis "has not demonstrated respect for the law and it is clear that a long period of incarceration is the only way to protect the public from [his] future criminal activity." R. Vol. 1 at 46. The court also said it would contemplate imposing the statutory maximum sentence of forty years on the methamphetamine charge. Mr. Davis objected to the district court's proposed upward variance, arguing the Guidelines range adequately considered the seriousness of his offense because it applied the higher offense level tied to the calculation for actual methamphetamine, as opposed to the lighter calculation for methamphetamine mixture.

At his sentencing hearing, Mr. Davis again asserted he should not receive an upward variance from the Guidelines because the length of his recommended sentence of 151 to 188 months was already enhanced—if not inflated—by dint of the ten-to-one

---

[3] In arriving at a total offense level of 31, the PSR first took the higher of Mr. Davis's base offense levels (stemming from the drug counts), which was a 32. *See* U.S.S.G. § 3D1.4. As directed by § 3D1.4, the PSR then increased the offense level by 2 points, to a 34, to account for the group of felon-in-possession-of-firearms charges. This offense level was then reduced by 2 points in acknowledgment of Mr. Davis's acceptance of responsibility for his actions. Finally, Mr. Davis received a single-point reduction for entering a timely plea of guilty, leaving him with a total offense level of 31.

disparity between calculations of sentences for actual methamphetamine and methamphetamine mixture.[4] But the district court was not persuaded that such a disparity was unwarranted, as evidenced by the following colloquy:

> [COUNSEL]: * * * we are getting an enhancement because it's pure methamphetamine.
>
> THE COURT: Pretty pure. 93%.
>
> [COUNSEL]: It is.
>
> THE COURT: That's about as pure as I've ever seen it.
>
> [COUNSEL]: And the basis for our argument is, given the disparity in the mixture and purity, Mr. Davis is—his sentenced [sic] is being enhanced simply because it is pure. And that would be our argument in this particular case. I understand . . . .
>
> THE COURT: Of course, when it's 93% pure, how many times can you cut that out on the street? Quite a few, can't you?
>
> [COUNSEL]: I would imagine. I'm not familiar with that, but . . . .
>
> THE COURT: Well, you and I are both familiar with the fact that drugs are frequently cut out on the street when they're that pure, cocaine or any—I mean . . . .
>
> [COUNSEL]: I understand.

*Id.* Vol. 3 at 32-33.

---

[4] Had the PSR converted the 57.41 grams of methamphetamine mixture at a rate of two, rather than twenty, kilograms of marijuana, the marijuana equivalent under the Drug Equivalent Tables would have been 114.82 kilograms, instead of 1067.826 kilograms. This, in turn, would have given Mr. Davis a base offense level of 26 for the drug counts in the PSR. *See* Appellee's Br. at 4 n.3. Ultimately, the PSR would have arrived at a total offense level of 28. When combined with Mr. Davis's criminal-history category of IV, this total offense level would have yielded an advisory Guidelines sentencing range of 110 to 137 months. *See id.* at 5 n.4.

The district court then went on to explain why it believed an upward variance from the Guidelines recommendation was necessary in imposing a sentence that satisfied the considerations embodied in 18 U.S.C. § 3553(a). The court noted that the crimes to which Mr. Davis had pleaded guilty were numerous and serious, that he had continuously been in trouble with the law since the age of fifteen,[5] and that his past criminal history included a number of drug offenses and crimes of violence. Having concluded that a long sentence was needed both to deter Mr. Davis from future criminal conduct and to protect the public from that conduct, the district court imposed on Mr. Davis a sentence of 308 months (25 years, 8 months) on all counts, a term that exceeded the upper end of the Guidelines recommendation by 120 months (10 years). Mr. Davis did not raise a contemporaneous objection to the district court's explanation of his sentence at the time of the hearing.[6]

Mr. Davis now brings this timely appeal. We are faced with a single issue: whether the district court procedurally erred in sentencing Mr. Davis by not adequately considering his argument that the recommended Guidelines sentence was already enhanced based on the ten-to-one disparity between actual methamphetamine versus methamphetamine mixture in the calculation of his Guidelines sentence.

---

[5] Mr. Davis was thirty-three years old at the time of sentencing.

[6] After pronouncing the sentence, the district court asked counsel for Mr. Davis whether he had "any substantive or procedural objections" to the sentence, to which counsel replied, "No, Your Honor." R. Vol. 3 at 44.

## II. DISCUSSION

### A. *Standard of Review*

Because Mr. Davis did not raise a procedural objection at the time his sentence was imposed, "we may reverse the district court's judgment only in the presence of plain error." *United States v. Ruiz–Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007). Plain error occurs when there is (i) error, (ii) that is plain, and (iii) that affects the defendant's substantial rights. *United States v. Trujillo–Terrazas*, 405 F.3d 814, 818 (10th Cir. 2005). If the error meets all three conditions, "the reviewing court may exercise discretion to correct the error if it would seriously affect the fairness, integrity, or public reputation of judicial proceedings to let the error stand." *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 631-32 (2002)).

### B. *Plain-Error Analysis*

In cases testing a sentence's reasonableness, "a procedural challenge relates to the 'method by which the sentence is calculated.'" *United States v. Lente*, 647 F.3d 1021, 1030 (10th Cir. 2011) (quoting *United States v. Wittig*, 528 F.3d 1280, 1284 (10th Cir. 2008)). A court commits a procedural sentencing error when it "fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Mr. Davis argues this is precisely what happened here because the district court never expressly ruled on his disparity argument at the sentencing hearing.

The district court imposed a significant upward-variant sentence on Mr. Davis. When the court stays within the Guidelines in pronouncing a sentence, it "'must provide only a general statement of its reasons, and need not explicitly refer to either the § 3553(a) factors or respond to every argument for leniency that it rejects in arriving at a reasonable sentence.'" *Lente*, 647 F.3d at 1034 (quoting *United States v. Martinez– Barragan*, 545 F.3d 894, 903 (10th Cir. 2008)). But when, as here, the sentence goes outside the Guidelines range, we require a more detailed explanation. This explanation must include "'the specific reason for the imposition of a sentence different from that described.'" *Id.* at 1035 (quoting *United States v. Pinson*, 542 F.3d 822, 833 (10th Cir. 2008)). In addition, "'[t]he court must also address . . . the material, non-frivolous arguments made by the defendant.'" *Id.* (quoting *Pinson*, 542 F.3d at 833).

Among the sentencing factors embraced by § 3553(a) is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A court is obligated to consider this factor—among others—even when a defendant "ha[s] not raised a specific argument on the sentencing-disparity issue." *Lente*, 647 F.3d at 1034; *see also United States v. Martinez*, 610 F.3d 1216, 1228 (10th Cir. 2010) (same). In this case, Mr. Davis argues the district court erred by failing to meaningfully engage with his disparity argument at sentencing. We disagree.

1.     *Error*

We begin at the first step of plain-error analysis, where we must ask whether the district court committed legal error at all. In our view, it did not. The district court is

required to state "the specific reason for the imposition of" an outside-Guidelines sentence. 18 U.S.C. § 3553(c)(2). This obligation on the part of the court extended to addressing Mr. Davis's "material, non-frivolous arguments." *Lente*, 647 F.3d at 1035 (quotations omitted). We are satisfied the district court gave Mr. Davis's disparity argument its sufficient due.

Mr. Davis raised his disparity argument both before and during his sentencing hearing. At the hearing, counsel for Mr. Davis explained to the court that "the basis for our argument is, given the disparity in the mixture and purity, Mr. Davis is—his sentenced [sic] is being enhanced simply because it is pure." R. Vol. 3 at 32. The district court then responded to this argument by observing that Mr. Davis had pleaded guilty to distributing a highly pure form of methamphetamine—"about as pure as I've ever seen it"—and that such a level of purity would allow it to be "cut" many times over: "[Y]ou and I are both familiar with the fact that drugs are frequently cut out on the street when they're that pure . . . ." *Id.*

On balance, we conclude the district court adequately considered Mr. Davis's argument on disparity and likewise offered a cogent explanation for rejecting it. To be sure, the district court could have given Mr. Davis a more elaborate explication of its reasoning. But such is not the stuff of error. "A reviewing court should be reluctant to read too much into a district court's failure to respond explicitly to particular sentencing arguments. Instead, the reviewing court must assay the record as a whole to gauge the sentencing judge's thought process." *United States v. Clogston*, 662 F.3d 588, 592 (1st Cir. 2011).

The government correctly points out that the district court's concerns about the methamphetamine's remarkably high level of purity are mirrored in the policy judgments of the Guidelines themselves. In a note discussing drugs other than methamphetamine, the Guidelines point out that "[s]ince controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." U.S.S.G. § 2D1.1 cmt. 9. "[I]n the case of . . . methamphetamine, . . . *the guideline itself provides for the consideration of purity*." *Id.* (emphasis added); *see also United States v. Kort*, 440 F. App'x 678, 685 (10th Cir. 2011) (noting that, while U.S.S.G. § 2D1.1 cmt. 9 does not apply to methamphetamine, "it is evident the Sentencing Commission recommends a higher offense level for 'Ice' methamphetamine, in part, because a drug of such high purity can be 'cut' with other substances for distribution in larger quantities").

On the whole, it seems to us that the district court adequately harmonized its position on the actual methamphetamine–methamphetamine mixture sentencing disparity with the sentencing policies embodied in the Guidelines. This was not error.

2. *Plain*

We also add that any error alleged here could not possibly have been plain. Plain error "must be 'clear or obvious' under 'well-settled law.'" *Trujillo–Terrazas*, 405 F.3d at 818 (quoting *United States v. Whitney*, 229 F.3d 1296, 1309 (10th Cir. 2000)). Mr. Davis relies on three cases in an attempt to show the district court's alleged error was plain. These are *Lente*, 647 F.3d 1021; our unpublished opinion in *United States v.*

-11-

*Santillanes*, 274 F. App'x 718 (10th Cir. 2008); and the Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85 (2007). We do not think any of these cases suggests the district court committed a clear or obvious error under well-settled law.

In *Lente*, we reversed a 192-month sentence in a manslaughter case, holding that "the district court's failure to address [the defendant's] argument about the need to avoid unwarranted sentencing disparities constitutes reversible procedural error." 647 F.3d at 1024. Despite the fact that "[t]he parties devoted substantial briefing and oral argument" to the sentencing-disparity issue before the district court in *Lente*, *id.* at 1032, the court nevertheless failed to expressly consider § 3553(a)(6) or otherwise address any of the defendant's material, non-frivolous argument on unwarranted sentencing disparities, *id.* at 1035-36. This, we concluded, required reversal. *Id.* at 1035.

Our unpublished decision in *Santillanes* dealt with sentencing for a methamphetamine offense, and we allow that the case bears a facial resemblance to this one. The defendant in *Santillanes* pleaded guilty to possessing, with intent to distribute, more than 50 grams of methamphetamine. 274 F. App'x at 718. As with Mr. Davis, "[h]is advisory guidelines sentence was calculated by comparing the amount of methamphetamine mixture . . . with the actual amount of pure methamphetamine contained in the mixture . . . , and then using whichever amount would result in a higher offense level." *Id.* The defendant argued to the district court that "the disparity between mixed and actual methamphetamine in the Guidelines produced a sentence that was greater than necessary under the factors delineated in 18 U.S.C. § 3553(a)." *Id.* The district court concluded—mistakenly, as it later turned out—that "it did not have the

-12-

power to accept [the defendant's] argument based on a mere policy disagreement with the Guidelines." *Id.*

While *Santillanes* was on appeal before this court, the Supreme Court decided *Kimbrough*, where it held that judges "may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." 552 U.S. at 91. As a general matter, *Kimbrough* teaches that "[a] district judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *Id.* Relying on the new holding in *Kimbrough*, the defendant in *Santillanes* successfully argued to us on appeal that the district court procedurally erred when it determined it could not "address his argument about the guidelines disparity between actual and mixed methamphetamine." 274 F. App'x at 719. The government conceded the argument, and we reversed the defendant's sentence and remanded for resentencing. *Id.*

*Kimbrough*, *Lente*, and *Santillanes* do not quite fit Mr. Davis's argument here. *Kimbrough* instructs that a sentencing court, as part of its "reasoned appraisal," may take into consideration sentencing disparities between drug offenses when deciding an appropriate sentence to impose. *See* 552 U.S. at 111. For its part, *Lente* dealt with a sentencing judge who—despite hearing extensive arguments on the issue from the defendant—apparently failed to consider a disparity argument at all. And *Santillanes* involved a district court that believed—as was perhaps reasonable, pre-*Kimbrough*—it did not have the authority to entertain a policy-based disagreement with sentencing

-13-

disparities for methamphetamine offenses. But those things did not happen in this case. The district court did not ignore Mr. Davis's disparity argument—it disagreed with it. Such disagreement falls cleanly within the bounds of rational sentencing under both the Guidelines and § 3553(a). It was not error.

3.      *Affecting Substantial Rights*

We also offer a brief word on why the sentence did not affect Mr. Davis's substantial rights. "For an error to have affected substantial rights, 'the error must have been prejudicial: It must have affected the outcome of the district court proceedings.'" *Trujillo–Terrazas*, 405 F.3d at 819 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). The party that failed to raise the issue below bears the burden of establishing prejudice to substantial rights. *Id.* Here, Mr. Davis would have to show the alleged error actually impacted the length of his sentence.

Mr. Davis does not argue the disparity between mixed and actual methamphetamine in the Guidelines is, in itself, constitutionally infirm. He contends only that the district court should have considered whether the application of that heightened ratio created an unwarranted sentencing disparity in his case. But the district court did consider this argument of Mr. Davis's. It is evident from the record that the district court believed the exceptional purity of the methamphetamine—coupled with Mr. Davis's lengthy criminal record—justified a much higher sentence in his case. In other words, the sentencing disparity was not unwarranted. We are not at all confident that, had the district court undertaken a more searching analysis of Mr. Davis's disparity argument, the sentence imposed would have been any different.

-14-

All of this is to say that Mr. Davis has not demonstrated a sentencing error by the district court. Because Mr. Davis has not satisfied any of the three conditions for showing plain error, we do not reach the question whether the alleged sentencing error could have affected the integrity, fairness, or public reputation of the judicial proceedings. In varying upward from the recommended sentencing range, the district court relied on valid policy considerations reflected in the Guidelines themselves. Those considerations were given added force when viewed in tandem with Mr. Davis's other relevant criminal conduct, which was extensive. Not every disparity is an unwarranted one. Simply put, nothing about the district court's sentence rises to the level of plain error.

### III. CONCLUSION

The district court's judgment is AFFIRMED.

Entered for the Court.

William J. Holloway, Jr.
Circuit Judge